Council, step up, please. Good morning, Your Honors. For the plaintiff appellant, Ron McConnish. Good morning, Your Honors. On behalf of the defendant appellee, Frank Greenfield, Michael Rassel. Thank you. Your Honor, how much time do you want to reserve for rebuttal? Five minutes, if I may. All right. Please proceed. Good morning again, Your Honors. May it please the Court, Council, for the plaintiff appellant, I.S.B.A. Mutual Insurance Company, Robert Chambers, President's daughter. Your Honor, this is an appeal involving an insurance coverage issue. It is an interesting issue from the standpoint there is one case in Illinois from 1934. It is hard to believe that there is any insurance issue in this state which this Court or the other districts have not wrestled with more than once in 78 years. Also, as this Court knows, appellate decisions from 1934, which are clearly before 1935, are not finding precedent in Illinois. That having been said, this is really a case of first impression. At least the modern age of insurance, the modern age of automobiles, because that was an auto case. Mr. Chambers, let me ask you this. Because I have some – because there is such a dearth of information in this case, I would like to ask you a question. I really wonder whether this really – this question of duty to defend, is it really – is the right issue before us? Because it seems to me that if you're trying to invoke the voluntary payment to avoid an obligation under the contract, that that obligation is not a voluntary payment. That obligation isn't necessarily one of providing a defense as much as not indemnifying. The clause in this policy has an unfortunate name, but names and titles don't count. It's what it says. It's called the Voluntary Payments Provision, but that's just one aspect of the clause. The clause says that the insured, dear Mr. Greenfield, will not admit any liability without ISBA mutual's prior written consent. We're not concerned about consent. We're not concerned about writing. This is a case of notice. There is nothing in this record which would show that Mr. Greenfield had to make the disclosures he felt he had to. Counsel, how does that square with the lawyer's ethical duty to his client? That's exactly where I was going. His client died, and he realized that before his client died, she signed the wrong will. He was aware of it. He admits it. That's not even contestable. This clause has nothing whatsoever to do with a disclosure to the beneficiaries of the insured's ethical obligation. There is nothing in this record that would show ISBA mutual ever indicated that it would interfere with the ethical obligation. But aren't you, in effect, saying that before he can exercise that duty, in whatever way he wants to exercise that duty, even in an overly broad manner, he has to get approval from ISBA? Well, what we are saying, Your Honor, is this is a policy that has a duty to defend. Where an insurance company has a duty to defend, it has the right to control the defense. Here it was tendered a defense that was out of control. That's the simplistic view of this case. He had a disclosure to make. There is nothing untoward about telling the insurance company, having the insurance company hire a lawyer for Mr. Greenfield, to meet with him and then to make disclosures to these people. Your Honor, this letter was sent to 27 beneficiaries, two of whom were going to receive the same amount under the mistaken rule. Twenty-one of them got too much money, not one of which returned it. Four of whom got almost $864,000 less. This was in a state of about $2.6 million net distributable assets. $863,900 less to four people. The ISBA mutual's position is very simple. He should have told us first. We could have helped him through counsel with writing a letter. He could have written a letter that even he, Mr. Greenfield, would not back away from. Let me ask you this. If the insurance company told him how to deal with the client and he wanted to deal with the client in a more fuller manner in his disclosure, would you have denied coverage under those circumstances? No. There has been no denial of coverage. The ISBA mutual's position is, having written the letter that was written. Let me get this clear, Mr. Chalmers. Are you saying that Mr. Greenfield, after discussing with ISBA the situation, could have written the very same letter and you would be okay with it? I'm not saying that. He would have written a letter. This letter, even Mr. Greenfield wouldn't have sent it to them. But going back to Justice Gordon's question, what if he wanted to go beyond the counsel that ISBA was giving him in terms of how he should exercise that obligation to disclose? What if he says, I want to write this letter? Well, I think the example of that is, ISBA mutual gave him counsel for the litigation. And in that litigation, Mr. Greenfield, as a defendant in the merits of the malpractice case, was presented with a 40-paragraph request to admit. And in that 40-paragraph request to admit, each one of the admissions, each one of the facts to be admitted was a sentence or a provision taken from this three-page letter. And he objected to no less than 18 of those. Eighteen out of, saying, I can't do it. I don't know what was in her mind. I don't know if Leonard put all his assets into the trust. He may have put some of them. All of the admissions that go to the heart of the malpractice, he backed away from. That wouldn't have happened had he had counsel who could have said, you might think those are facts, but they're not really facts. You don't know what she was thinking. So going back to Justice Gordon's question, he wouldn't have free reign in terms of how he would address his duty to disclose once ISBA is involved. He would have had counsel from ISBA mutual? He would have had counsel? We know that. But are you saying that counsel would have sort of controlled his hand in the course of writing the letter? But he rejected that advice. If he rejects the advice, he may be in breach of the cooperation clause of the policy. We're not concerned with the cooperation clause. We're concerned with a notice provision. In other words, if this letter was written after the advice and consent of counsel, we wouldn't be standing here. The letter was written before. The letter admits each element of a legal malpractice claim. Wouldn't we be standing here on another issue? No. The sole issue in this case was, does this letter constitute an admission of liability? And if it does, has ISBA mutual been prejudiced? And the answer to both questions is yes. Show us the prejudice part. The prejudice part is, ISBA mutual, as I said, is where they are defending or entitled to control the defense. This was a defense that was out of control. They learned about the letter when he was sued. It was almost nine months later. That having been said, they were not in a position to offer any advice with respect to the content of the letter. There is nothing in this record that ISBA mutual would have trampled on the ethical obligations this lawyer had to the beneficiaries, 21 of whom had a windfall, four of whom had a loss. But where is the prejudice to ISBA based on the letter if, and I'm not, I didn't even like the request to admit. But hold on, I didn't even like the request to admit. I thought the request to admit simply directed Greenfield to admit or deny that the letter that he wrote contained these disclosures as opposed to admitting that the facts that he put in the letter were in fact facts that could have been established at trial. But setting that aside, I wonder where the prejudice is if these facts are facts that Mr. Greenfield eventually had to admit. I mean, you acknowledge that Blake says you can't conceal evidence. The facts are facts he had to admit because he wrote them in his letter. They're not true. I disagree with you. So they're not, the facts would have somehow changed had he not put them in the letter counsel, is that what you're saying? He writes it. Would he have been mistaken in the letter? Well, he could have been mistaken. Right, and it goes to Justice Hall's point that it's either a fact or it isn't a fact. It was a fact to him at the time, but whether it was a fact that was knowable to him at the time is something that subsequently we found out were not facts, that he backtracked from 18 of the 40 facts in this letter. And this is the question I had. Pardon me? This is the question that popped into my head. You're saying that he was wrong in writing the letter and then, no, wrong in writing the will. He was negligent in. He says he was. Right, and there's no dispute about that. Right. But then he's wrong as well as in some of the facts that he puts in his letter. You know, I just wonder whether that isn't a basis to address at trial that he was wrong once, he was wrong twice. You know, he was wrong both times, so we still have to address the merits. In this letter, he was, because of the content of this letter and the nature of the request to admit and the objections made by ISBN Mutual's retained defense counsel for Mr. Greenfield, he was not permitted by the trial court to backtrack from any of the evidence. Let me ask you this. Regarding the 17 or so, I forget, 18, do we have to look at only those? Or do you have to demonstrate that you were prejudiced based on those 18? We were prejudiced based on the fact that the letter, I think that the idea of this letter is almost a fallacy. It's the fig leaf that the defendant is putting before us, and it's a fig leaf from the standpoint. He had to write a letter. He didn't have to write this letter. If he had counsel from the insurance company, he would not have written this letter. He wouldn't write this letter again, and he showed that by the objections he made to what he wrote in this letter. He wrote things that he himself said, I can't admit. I don't know if Lender did this. I don't know what Muriel was thinking. I don't know. But having said that, this letter is going to be the basis for a summary judgment in the malpractice case. Why? It admits an attorney-client relationship. It admits a duty. It admits a breach of duty. It admits a proximate clause, and it gives an estimate of damage. I would say that the only issue in the merits case is damage. He admits everything else, and those admissions, those admissions of fact under the case the defendant signs, McGrath v. Botsford, under certain circumstances, are admission of liability. This case is a far different scenario than what a panel of this court 78 years ago said wasn't an admission of liability, and you have to wonder about it. Guy has an auto accident. Two people are injured. Follow your three minutes over here, your time. Go ahead and wrap it up. All I was going to say with respect to that is the day after the accident, the other driver is in the hospital. He apologizes. He said, I'm sorry. I lost my head. I don't know what happened. It's all my fault. You will be taken care of. But the court 78 years ago remarkably said that was not an admission of liability or statement of fact. I submit this letter is an admission of liability. It's a breach of the policy, and we'd ask this court respectfully to reverse. I do have one quick question. Sorry. Going to your right first? All right. Real quickly, the ‑‑ escapes me. I'll have ‑‑ I'll be back up here. Yeah, you'll be back up here. All right. Thank you. Thank you. Good morning, Your Honors. Michael Razzak on behalf of the defendant appellee, Mr. Greenfield. I think one thing I guess we're all in agreement on is that Mr. Greenfield did in fact have a right to have duty, an ethical duty of duty under the rules to inform the client of the facts of the situation, that would include the beneficiaries. Did he go too far here? He did not. If he had done any less, I think he would have arguably been sued for not being sufficiently clear about what happened. The letter itself really ‑‑ I know I've said it in the brief. The letter itself basically, when you distill it, said two things. I should have put this clause into the last will and trust, and here is a comparison of what the 2007 will and trust pays, and here is a comparison of what the 2008 will and trust pays. All right, Mr. Razzak. It doesn't say what people are going to get. That's for a probate. Well, the flip side of the question that Justice Gordon asked, did he go too far, is how much farther would he have to go to admit liability under their theory? What do you think was missing from the letter that would have satisfied, that would have constituted an admission of liability? The question I did have was, why is it liability as opposed to fault? Liability sounds like a legal term that you only encounter after a trial, and maybe this clause really refers to what kind of testimony, maybe cooperation, who knows. But anyway, what more would he have been required to include in the letter to satisfy this liability standard? There is a difference between fault and liability, at least the Black's Dictionary definition. Liability leaves nothing to be done. In this situation, what he would have had, what Mr. Greenfield would have to have done, in order to admit liability, would be to put something in this letter so that the beneficiaries had nothing left to do but go to court and say, based upon this document, you must enter judgment against them, and they can't do that here because he simply admitted his negligence, not the results of the negligence. And as a matter of fact, I can prove that because in the defense reply brief, I'm sorry, in the defendant's main brief at page 23, they admit that the legal effect of the letter has yet to be decided. And the reason for that is that this court might, we might not know what other defenses might exist out there. There is no statute to propose, but it could be there. There could be other reasons why they wouldn't be damaged. That's why his letter was careful to say, the letter is nothing more than a mathematical calculation. And if he writes the letter today or tomorrow, those two things have to be there. Now, those two things dramatically increase the chances that he's going to have a difficult time at the trial of the underlying case. But the case is... But he would have had a difficult time, regardless. Regardless, whether it's in the letter or not, and that's the point. The letter says two things. Let me ask you this, Mr. Ratzak. Going back to the initial question I asked Mr. Palmer, that why should we even be addressing duty to defend? Because it seems to me that duty to defend should always exist. Because you yourself say in your brief that there's no doubt that this was a covered act. Why should it be duty to defend under this voluntary payment clause as opposed to indemnification if a violation is found? That would be the very short answer to the question put to the trial court. And the reason it wasn't is because MIC phrased it differently and forced us to confront it differently. At this point, I think, frankly... Do you think it's really a question of duty to defend given the standard for duty to defend? I would have to think that out before I was willing to answer that, Your Honor, because it might have repercussions that I'm not thinking of as I stand here. I think at this point, probably the parties... I know the Court doesn't give advisory opinions, but this has been hanging over people's heads for a long time. The outcome is not going to change and the issue is going to come back up there. It's not resolved now. It's going to be resolved two years from now when we get to the question of if we lose the case. We may not lose the case. The underlying case moves on and on. There are defenses. There may well be an appeal in the underlying case because of a defense that was raised in the trial court in the underlying case and that the trial court judge would not let us put into the record there. So that's something else that wasn't in this letter. And that illustrates my point that there wasn't a defense to this case that was presented to the trial court in the underlying case and the Court rejected it. Regarding prejudice. Regarding prejudice. Yes. Let me ask you, regarding those requests to admit, those 18 that are disputed, does the prejudice have to arise from those? Because the other ones are facts, aren't they? They are. And they would have been discovered at some point. If we don't have the letter, he still has to make the same answers to the request to admit. And if I can kind of – it's a two-pronged answer. One, this parade of horribles, these things they would have done, that they would have done, that they would have answered things differently if he, if Mr. Greenfield had first gone to the MIC. It's not really something they raised down below. They've admitted that, that it's a new issue. Secondly, the request to admit don't simply say, did you say this in the letter? The request to admit have a little baggage to them, as any good lawyer would add, and his lawyer was trying to avoid that. I think that – I hope that answers that question. The point of the request to admit and equate them to the letter is not the same because they don't ask the same identical things. If the policy said that the insured had to meet with the insurance company before providing any letter or information to the client, what would you think of that type of provision? That would put me in a much more difficult situation. That was an analogy I was going to bring to the court, which entirely slipped my mind. If they wanted this policy to say that a lawyer cannot communicate to his client, I don't know how they could ever get away with that because as soon as they put that into the policy, they begin to interfere with the lawyer's duty to communicate with his client. I don't know that the ethics people would agree to a situation where I need to screen my information through some intermediary party before there is litigation. It's almost like a pre-censorship issue. There's no claimant bound at that point, and yet I'm fulfilling my duty to the beneficiaries, who are just like my clients, and yet running it through a third party, does that not potentially just intrude into the attorney-client relationship at that point? If they put that in there, that is... Aren't they, in effect, asking for that very same thing? My worthy opponent stood here and said the issue is the need to communicate, the need to give us notice. That was his phrase, the need to give us notice. That clause in the policy does not say before you talk to your clients about anything that might be adverse to them, give us notice. You must admit, what was it, nine months, almost a year, before your client gave notice to Mr. Chambers' client? It was a significant amount of time. He gave notice, I believe it was nine months, he gave notice when the claim was made. Until that point, no claim had been made. And there is no issue here about whether or not the notice to the carrier was made. Even MIC will not raise that. I said it dismissively because I fought with MIC before. Doesn't that raise the other issue? If there is no claim, why should the insurance company have any role in what the attorney is doing? That was what I tried to make, that was implicit, I hope, in what I said before. At that point, there's a discussion between the beneficiaries and the attorneys, and yet they want us to run this information to them. That intrudes into the relationship between the client and the attorney. Can you imagine the insurance company saying, is there a claim present? Is there a claim filed? And if there is no claim filed, we don't want to talk to you. At all. I would think a good insurance company would do that. And it's interesting enough, I think it was Justice Gordon who asked the question about what would have happened if he'd said to them, the MIC's reply brief admits at page 3, and I had to check that before I stood up, we agree we had no right to veto the letter. Well, if they have no right to veto the letter, then he had the right to send the letter, and telling the MIC about it was not going to change anything in that court or this court. Well, tell me how I'm wrong. It's my understanding that an insurance policy is a contract between parties. Yes, sir. I agree. And if the insurance company puts in a provision in that contract, you have to comply with it unless it's against public policy. Isn't that true? It's true so far as that statement went. But even MIC agrees here that under the MFA versus Cheeks case, I think it is, they also have to show prejudice. So even if we breached some provision in this policy, they still have to show that that changed the outcome in the underlying case. And they can't do that because all we said in the letter were the same facts that we would have had to say if we were called to testify at the trial of the case. So I hope that answers Your Honor's question. There's another part to that that I needed to address. Unless the court has further questions, obviously the court is aware of the facts and the arguments. We obviously ask that the trial court be affirmed. Thank you. A few points, Your Honor. Now, Justice Garcia, the duty to defend does not always exist, respectfully. Okay. It's not an issue we have to address anyway because it's not raised. Right. And as far as a claim, under this policy, knowledge by Mr. Greenfield of an incident or circumstance that may lead to a claim is a claim. So it was unmistakable that at the time he sat down to write this letter, he was aware of a claim. But just so it's clear, the notice obligation doesn't arise until there's a claim filed. No. The notice obligation arises... Well, in terms of not being precluded from receiving the benefits... Respectfully, the notice to the insurance company arises when the insured is aware of an incident or circumstance that may lead to a claim. That's in the policy. But there was no issue regarding a tardy notice being provided by Mr. Greenfield. No. And there is nothing in this record, again, Your Honors, that Mr. Greenfield's ethical obligation to disclose the error had to be fulfilled before he notified ISB and Mutual. This is a notice case. This is a contract. The contract says, don't do this. Don't admit liability. Don't pay expenses. Don't settle a claim. Don't assume an obligation without telling us first. ISB and Mutual had a right to know. They had the right to control the defense. Bear in mind, at this time, ISB and Mutual's and Greenfield's interests were aligned. Provide him the best defense they can and pay as small amount of money as they would have to on his behalf. The idea that something that was done in the trial court was, something argued here was not done in the trial court, with respect to Mr. Rasek, that waiver might be binding on the parties. It's not binding on this court. I don't think anything was waived. The trial court said it was not an admission of liability. We think the trial court was wrong. We think Blake would say this is an admission of liability. I don't know how long after Muriel died that the letter was written, unlike Mr. Blake, who went to the hospital the morning after the afternoon of the accident, stood there and said, I'm sorry, it's my fault, you'll be taken care of. How that's not an admission of liability. Now, how did 78 years go by without litigating this issue, other than it must be so obvious no one would litigate it? Don't write an opinion telling the lawyers in this state, you don't have to give notice to your insurance company. Until you're good and ready, if you have an obligation to disclose what you did to your client. Going back to a point just raised about the contract nature of the relationship between Mr. Greenfield and ISBA, I still haven't seen the notice obligation provision that you believe obligated him to contact. What we're saying, you're taking me out of context. Okay. The notice we're talking about here is what's found in this clause. Prior written consent. But it doesn't say that, as Mr. Ranzi pointed out, it doesn't say that. Well, it does say, except at your own cost, you will not admit liability without ISBA mutual's prior written consent. We're not talking about written, we're not talking about consent. The notice we're talking about is prior. Nothing he did had to be done before he gave notice to the insurance company. Having done that, our position is he breached the contract. Here's the thought that popped into my head, that this doesn't seem too unlike the medical insurance company's desire to control medical treatment by requiring pre-approval. Pre-certification. And yet here, your position is not too far from attorney Greenfield cannot act in the course of fulfilling his duty to his client until ISBA gives the okay. Well, until ISBA mutual is put in a position to do what its policy says it will do, provide them with a defense. Again, they had a right to control the defense. The defense they were given was out of control. And again, we'd ask this court to reverse. Thank you. Unless there are other questions. Anything? Thank you. Thank you, counsel. This matter will be taken under advisement. This court is adjourned.